NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0061n.06

No. 09-4036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 31, 2011**
LEONARD GREEN, Clerk

OVERLOOK MUTUAL HOMES, INC., )
)
      Plaintiff-Appellee, )
)
v. )
)
VICKIE L. SPENCER, individually and )
as parent and natural guardian of )    On Appeal from the United States
LYNSEY SPENCER, )    District Court for the Southern
)    District of Ohio
      Defendant/Counterclaim Plaintiffs - )
      Appellant, )
)
and )
)
JOEY SPENCER, )
)
      Counterclaim Plaintiff - Appellant. )

Before:      BOGGS and MCKEAGUE, Circuit Judges; and QUIST, District Judge[*]

      BOGGS, Circuit Judge. Vickie Spencer appeals the district court's holding that Overlook

Mutual Homes, Inc. ("Overlook"), a non-profit mutual housing corporation, did not constructively

deny her request for a reasonable accommodation for her daughter's disability under the Fair Housing

Act ("FHA") and Ohio's fair housing law. As no reasonable jury could find that Overlook denied the

request, we affirm the district court's grant of judgment as a matter of law for Overlook.

_____

      [*]The Hon. Gordon J. Quist, United States District Judge for the Western District of Michigan,
sitting by designation.

I

The facts of this case are drawn from evidence presented during a jury trial held on July 23-24, 2009.  Reviewing a grant of judgment as a matter of law, we view the evidence in the light most favorable to the Spencers, the non-moving parties.  *See* Fed. R. Civ. P. 50(a).

Vickie Spencer has been a resident of Overlook nearly her entire life.  Her husband joined her there in 1994, and their daughter, Lynsey, was born in 1996.  According to the Spencers, Lynsey has suffered from an anxiety disorder since 2004 and has been treated by a psychologist since 2005. The family adopted a dog, a cockapoo named Scooby, in October 2005.  They admit that the dog was not originally prescribed by a medical professional but claim that Scooby had a calming effect on Lynsey, allowing her to remain in a room alone and sleep in her own bed.  In 2007, according to the Spencers, Lynsey's psychologist recommended that the family use Scooby as a companion or emotional support animal to facilitate Lynsey's treatment.

The Spencers knew when they adopted Scooby that Overlook had a long-standing "no pet" rule.  At first, aware of no exceptions to the rule for persons with disabilities, they denied having the dog in their residence.  After receiving a warning from Overlook's management, they sent the dog away, but found that Lynsey's symptoms worsened.  The Miami Valley Fair Housing Center (MVFHC) advised them that Scooby could qualify as an accommodation of Lynsey's disability under the FHA.  The Spencers brought the dog back into their home in August 2007, at which time the MVFHC made a request on their behalf to Overlook for an accommodation.  In a letter to Overlook dated August 1, 2007, MVFHC President Jim McCarthy stated that Lynsey was receiving psychological counseling and that her psychologist had recommended that she have a "companion

animal/service dog to facilitate her treatment." The letter advised Overlook that such an accommodation was required by the FHA. Attached was a letter from Lynsey's psychologist, stating that she had evaluated Lynsey and recommended a "service dog."

On August 10, 2007, Overlook's legal counsel replied to McCarthy, stating: "Overlook has established a policy allowing disabled residents needing a service animal to apply for a waiver." Overlook told the Spencers to submit a waiver request to Overlook's Board of Trustees, along with additional information, including a diagnosis of Lynsey's medical condition, contact information for her medical providers, a description of the treatment Lynsey was receiving, a description of the services provided by the dog and the training it had received, and Lynsey's school and medical records. The letter stated that the requested information was to be sent by August 24, 2007, adding that Overlook would "refrain from instituting eviction proceedings" pending the Spencers' response.

McCarthy replied in a letter dated August 23, 2007, stating that the Vickie Spencer would submit a waiver request, but that Overlook was not entitled to all the documents and information requested. He enclosed a copy of the FHA guidelines issued by the Department of Justice and the Department of Housing and Urban Development. *See* Joint Statement of HUD and DOJ, "Reasonable Accommodations Under the Fair Housing Act" (May 14, 2004) ("Joint Statement"). McCarthy also explained that Scooby was not a specially-trained "service animal," but a "companion animal" that provided "emotional support and companionship." He stated that Lynsey was being treated for "anxiety disorder and other neurological and emotional conditions that impact her ability to care for herself and learn, both of which are of central importance to her daily life, and thus are clearly

recognized as 'major life activities.'" The dog, he explained, "ameliorates the effects of her disability through its mere presence and her interactions with it."

Vickie Spencer submitted a waiver request form on August 31, 2007, again stating that Lynsey suffered from "anxiety disorder, neurological & emotional conditions" and that "[t]he dog ameliorates the effects of Lynsey's condition through its presence and interaction with her." The form also provided the name of Lynsey's psychologist. Around the same time, Vickie Spencer filed housing discrimination charges against Overlook with the Ohio Civil Rights Commission (OCRC).

The Board considered the request on September 4, 2007. It determined that it needed additional information before reaching a decision and authorized a lawsuit should the information not be forthcoming. In a letter dated September 11, 2007, Overlook's counsel again requested a signed release that would allow the Board to obtain Lynsey's medical and counseling records. The letter stated that the waiver application would "remain pending" until the records were provided and that if the requested information was not provided, Overlook would "file suit to obtain these records."

After receiving this letter, Vickie Spencer and the Miami Valley Fair Housing Center retained counsel. In a letter to Overlook dated September 25, 2007, their attorney expressed concern "about the invasiveness of the inquiry . . . into Lynsey's medical records" and proposed a conference call with Lynsey's psychologist as an alternative. The proposed telephone conference did not take place. Overlook did not begin eviction proceedings against the Spencers, nor did it make an official decision on the accommodation request. Instead, on October 18, 2007, it filed suit against Vickie Spencer for a declaratory judgment that it was not required to make the requested accommodation.

Overlook asked the district court to declare that (1) "Overlook must be provided with medical and counseling records maintained by [Lynsey's] psychologist;" (2) "Overlook's request to be provided with copies of medical and counseling records" did not violate housing discrimination laws; (3) "Overlook is not obligated to waive its no pet rule" should the Spencers fail to provide "sufficient medical and counseling records;" and (4) "the dog . . . is not a service animal as defined by law, and does not qualify as a reasonable accommodation." Spencer, joined by her husband, counter-claimed. The Spencers alleged that, under the FHA and the Ohio fair housing law, Ohio Revised Code § 4112.02(H), Overlook's failure to make a reasonable accommodation denied Lynsey "an equal opportunity to use and enjoy a dwelling unit, and caused anxiety and concern on the part of her parents . . . because they believed the family's housing would be put at risk if they allowed Lynsey to keep her emotional support animal." They also alleged that Overlook negligently failed to train its employees "regarding the requirements of federal and state fair housing laws." The Spencers claimed to have suffered "mental anguish and emotional distress, and the attendant physical injuries" and sought injunctive relief, statutory and punitive damages, costs, and attorney's fees.

Overlook moved for summary judgment on its own claims and the Spencers' counterclaims, on the grounds that (1) it was entitled to obtain information necessary to evaluate Vickie Spencer's request; (2) an animal must have training to serve as a "service animal," as required by the regulations of the Americans with Disabilities Act (ADA); and (3) it had not been negligent and had taken no action causing the Spencers harm. The district court denied the motion, holding that, first, there was a question of material fact as to whether the information sought by Overlook was necessary, given that Overlook did not take advantage of the opportunity to speak with Lynsey's psychologist. Second,

the court held that it was not necessary for Scooby to be a trained "service animal" in order to qualify as a reasonable accommodation under the FHA. Finally, the court found that there were genuine issues of material fact as to whether Overlook violated a duty and whether the Spencers suffered harm.

The case proceeded to a jury trial. At the conclusion of the presentation of evidence, the district court granted Overlook's motion for judgment as a matter of law on the Spencers' counterclaims, pursuant to Federal Rule of Civil Procedure 50(a). The court explained that the Spencers had to establish five elements in order to prove that Overlook had violated the FHA, thus entitling the Spencers to damages and attorney's fees: (1) Lynsey was disabled within the meaning of 42 U.S.C. § 3602(h); (2) Overlook knew or should reasonably be expected to have known of the disability; (3) the requested accommodation was necessary to afford Lynsey an equal opportunity to use and enjoy the dwelling; (4) the accommodation was reasonable; and (5) Overlook refused to make the accommodation. The court found that, although a reasonable jury could find for the Spencers on the first four elements, they had produced insufficient proof that Overlook had actually *denied* their request for a reasonable accommodation. Rather than denying the request, the court reasoned, Overlook had sought guidance from the court on an unsettled question of law: whether a companion animal must be a specially trained "service animal" in order to qualify as an accommodation under the FHA. The court therefore entered judgment as a matter of law for Overlook. The Spencers timely appealed.

II

The sole issue before this court is whether the district court erred in holding that, as a matter of law, Overlook did not constructively deny the request for a reasonable accommodation by delaying making a decision on the request, requesting school and medical records, and filing suit for a declaratory judgment. We review the district court's grant of judgment as a matter of law de novo. *Kusens v. Pascal Co.,* 448 F.3d 349, 360 (6th Cir. 2006). Judgment as a matter of law is appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [the non-moving] party" on an issue essential to a claim. Fed. R. Civ. P. 50(a).

III

As amended by the Fair Housing Amendments Act of 1988, the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ." 42 U.S.C. § 3604(f)(2). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). To prove that a housing provider failed to reasonably accommodate a disability, a plaintiff must prove that: (1) she suffers from a disability within the meaning of FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) the

defendant refused to make the accommodation. *Dubois v. Ass'n. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2005).[2]

The matter before us involves only the last of the elements listed above: whether a reasonable jury could find that Overlook "refused" to make the accommodation requested. In analyzing the issue, we consider (1) the extent to which Overlook delayed and obstructed the process of negotiation over the requested accommodation by filing the lawsuit; (2) the state of the law at the time the suit was filed regarding whether a companion animal needed special training to qualify as an accommodation; and (3) the fact that the Spencers were not evicted, nor was Scooby removed from their home.

We first consider Overlook's failure to respond promptly to the Spencers' request. The Joint Statement[3] issued by HUD and the DOJ, a copy of which McCarthy provided to Overlook, indicates that a housing provider "has an obligation to provide prompt responses to reasonable accommodation requests. An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation." Joint Statement at 11. Moreover, the Joint

---

[2]The Ohio Fair Housing Act is substantively identical to the FHA. Accordingly, our analysis of the latter applies to the Ohio law. *See Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1041, 1047 (6th Cir. 2001) (calling Ohio's law "analogous" and "equivalent" to the FHA); *Carter v. Russo Realtors*, 2001 WL 537019, at *1 (Ohio App. 2001) ("Chapter 4112 properly is interpreted in reference to federal law.").

[3]This document is a policy statement, not an authoritative interpretation of § 3604. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant *Chevron*-style deference."). It may of course, have the "power to persuade." *See ibid.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Statement states that a "failure to reach an agreement on an accommodation request is in effect a decision by the provider not to grant the requested accommodation." *Id.* at 9.

A housing provider, however, is entitled to seek information from an allegedly disabled person in order to establish the existence of the disability and the necessity of the accommodation. According to the Joint Statement,

> [I]n response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability . . . , (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation.

*Id.* at 13. This inquiry need not be highly intrusive. "In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary . . . ." *Id.* at 13–14.

In this case, Overlook was likely entitled to ask for more information than the Spencers initially provided. The August 1, 2007, letter from McCarthy was the first time Overlook was notified of Lynsey's alleged disability. It specified no diagnosis and relied for support on a letter from Lynsey's psychologist that merely stated that Lynsey was receiving "psychological counseling services" and required a "service dog." This did not allow Overlook to verify that a qualifying disability existed or that the proposed accommodation was related to the disability. Even after receiving McCarthy's letter of August 23, 2007, and the Spencers' waiver request of August 31, 2007, Overlook was entitled to additional information. At the same time, Overlook was probably not entitled to the broad access to confidential medical and school records it demanded.

In some circumstances, a housing provider that refuses to make a decision unless a requestor provides unreasonably excessive information could be found to have constructively denied the request

by "stonewalling" and short-circuiting the process. The Spencers claim that Overlook injured them by keeping them in limbo, dangling "the Sword of Damocles" over their heads. We acknowledge that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial. In *Groome Resources Ltd. v. Parish of Jefferson*, a parish that delayed making a decision on a group home's application for a zoning variance for ninety-five days was held to have denied a request for a reasonable accommodation. 234 F.3d 192, 197 (5th Cir. 2000). In *Astralis Condominium Ass'n. v. Secretary, U.S. Department of Housing and Urban Development*, a condominium association's year-long delay in granting a request for handicapped parking spaces constituted a denial. 620 F.3d 62, 68-69 (1st Cir. 2010). Were it not for additional factors that are present here, the Spencers would have presented a jury issue as to whether Overlook "denied" their request.

The second circumstance we consider is the state of the law at the time Overlook filed its complaint. In this case, the district court found that Overlook's need to clarify the law regarding the requested accommodation justified its delay in responding to the request. It reasoned that, at the time, "the law was quite frankly favorable to Overlook," and that Overlook "was well within [its] rights . . . to get a court ruling on whether a dog that is the subject of a reasonable accommodation can be any companion animal." In concluding that the law "favored" Overlook, the district court cited *Prindable v. Ass'n. of Apartment Owners of 2987 Kalakaua*, which held that "evidence of individual training" is required to show that a "service animal" is a reasonable accommodation under the FHA. 304 F. Supp. 2d 1245, 1256–57 (D. Haw. 2003), *aff'd on other grounds sub nom. Dubois*, 453 F.3d at 1179 n.2 (declining to reach issue of "whether the plaintiffs must prove that [a dog] 'is an

individually trained service animal'"). *Prindable* borrowed the definition of "service animal" from

the ADA and largely relied on the reasoning of a West Virginia Supreme Court case. *See In re Kenna*

*Homes Coop. Corp.*, 557 S.E.2d 787, 797 (W. Va. 2001) (holding that "some type of training is

necessary to transform a pet into a service animal").

The Spencers dispute that the law favored Overlook, pointing to several federal, state, and

administrative decisions holding that companion animals without specialized training may be

reasonable accommodations under the Rehabilitation Act, the FHA, and "state statutes that are

analogous to the FHA."[4] But we agree with the district court that there was at least some dispute in

the law as to whether a "service animal" required training and whether it had to do more than provide

comfort and companionship to qualify as an accommodation.

The fact that the law is not entirely clear concerning a requested accommodation will not

always justify a housing provider's filing suit rather than responding to a request. Accommodations

are often highly specific, and in many cases there will be no case law that indicates a particular

accommodation is required. Simply claiming that the law is "unclear" should not entitle the provider

---

[4]In their brief to this court, the Spencers cite *Janush v. Charities Housing Development Corp.*, in which the court found a triable issue of fact as to whether a tenant's birds and cats could constitute a reasonable accommodation for her mental disability. 169 F. Supp. 2d. 1133, 1136 (N.D. Cal. 2000) ("Even if plaintiff's animals do not qualify as service animals, defendants have not established that there is no duty to reasonably accommodate non-service animals."). They also cite two administrative law decisions holding that landlords must accommodate companion animals. *See Sec'y, U.S. Dep't of Hous. and Urban Dev. v. Dutra*, HUD ALJ 09-93-1753-8, 1996 WL 657690 (HUD ALJ Nov. 12, 1996) (cat providing emotional support that eased anxiety and fibromyalgia symptoms a reasonable accommodation); *Sec'y, U.S. Dep't of Hous. and Urban Dev. v. Riverbay Corp.*, HUD ALJ 02-93-0320-1, 1995 WL 108212 (HUD ALJ Mar. 1, 1995) ("companion dog" a reasonable accommodation).

to delay and obstruct the accommodation process. But in this case, the fact that Overlook could point to case law indicating that it was not required to treat Scooby as an accommodation weighs against the reasonableness of a jury finding that its actions in seeking additional information and turning to the court for clarification constituted a denial of the Spencers' request.

Finally, we consider the fact that Overlook never began eviction proceedings against the Spencers, nor was Scooby removed from their home. This distinguishes the present case from *Groome* and *Astralis*, in which a delay in responding to a request was found to be a denial. In those cases, the delay had the effect of depriving disabled persons of the accommodation. In *Groome*, because a parish delayed awarding a permit that would allow a company to operate a group home for Alzheimer's patients, the company was unable to close on the building it hoped to purchase and could not open the facility. 234 F.3d at 200. Similarly, in *Astralis*, a condominium association's delay in granting a request for handicapped parking spaces meant that the accommodation was not available: "when the complainants unilaterally parked in those spaces, they received violation notices." 620 F.3d at 69.

In contrast, the Spencers' case is more like *Dubois*, in which a condominium association granted a temporary exemption from its "no animals" bylaw while it investigated an accommodation request. 453 F.3d 1175, 1179 (9th Cir. 2005). The Ninth Circuit held that, because the provider "never refused to make the requested accommodation, plaintiffs' FHA claim necessarily failed." *Ibid*. True, Overlook never granted the Spencers a temporary exemption from the "no pets" policy, but the more important fact is that Scooby was allowed to stay with the family, and they were never required

to leave their home or otherwise punished for Scooby's presence. Thus, Overlook's actions did not deny the Spencers the benefit of Scooby's company.

IV

As a general rule, housing providers should cooperate with residents to resolve disputes over reasonable accommodations rather than turning to the courts. But given that the law regarding companion animals was somewhat unclear at the time that Overlook sought a declaratory judgment, and given that the Spencers had the benefit of their pet's company while awaiting the outcome of the litigation, Overlook's failure to engage in a more constructive dialogue with the Spencers did not constitute a denial of their request for an accommodation. Because the Spencers have not raised a question of fact as to this essential element of their FHA and related claims, we AFFIRM the district court's grant of Overlook's motion for judgment as a matter of law.